## A01A1197. RAGAN v. THE STATE.
(550 SE2d 476)

MIKELL, Judge.

Christopher Ragan was charged with aggravated child molestation and aggravated sexual battery following an incident involving his girlfriend's one-year-old son. The jury convicted Ragan of aggravated sexual battery for intentionally penetrating the baby's anus with a foreign object. He was found not guilty of aggravated child molestation.[1] Ragan appeals his conviction. We affirm.

Viewed in the light most favorable to the jury's verdict, the evidence shows that in October 1999, Ragan's teenaged girlfriend,

---

[1] That charge alleged that Ragan inserted his fingers into the child's rectum.

Michelle Felker, and her baby, J. F., moved into the home in which Ragan resided with his parents. On the afternoon of December 14, 1999, Brian Giese, a friend of Ragan, visited their home. Shortly after Giese's arrival, Felker left with Ragan's mother, Patty Ragan, to pay a bill. Giese testified that he departed a few minutes later to watch his girlfriend's soccer practice. According to Giese, when he left, the baby was sleeping on Ragan's bed, where Felker put him before she left.

When Felker and Mrs. Ragan returned, the baby was screaming, and Ragan was changing his diaper. Mrs. Ragan entered the bedroom first and observed that "the little baby's bottom . . . was blue around the anus, and it . . . had blood in the diaper." Felker also testified that the baby's rectum was torn and bleeding. When Felker and Mrs. Ragan asked what had happened, Ragan initially told them that he thought J. F. had fallen off the bed while Ragan was outside smoking a cigarette. Felker and Mrs. Ragan took the baby to the hospital.

Dr. Mark Wittmer, the first doctor who treated J. F. that day, testified that the baby had been injured by "blunt force instrumentation insertion." Dr. Wittmer testified at length about J. F.'s injuries and concluded that they were inconsistent with falling off a bed onto the floor. Dr. Wittmer further testified that it was apparent that someone held the baby down while inserting a blunt object into his rectum, that the baby was in a great deal of pain and very frightened, and that the injuries were considered life threatening. The doctor also identified a number of photographs that depicted J. F.'s injuries.

Dr. Cullen Richardson was called to perform emergency surgery on J. F. due to the severity of the injuries. Because of the extensive tearing of the baby's rectum, a colostomy was required. Dr. Richardson testified that it would have required multiple insertions of an object to inflict the injuries suffered by J. F., and that such internal injuries could not have been caused by falling onto the floor. Dr. Richardson also testified that the injuries were consistent with the insertion of a dildo owned by Ragan and admitted into evidence.

Officer Dwayne Higginbotham of the Albany Police Department testified that he received a call to report to Ragan's home at approximately 4:29 that afternoon. Officer Higginbotham testified that when he arrived, Ragan told him that the baby had fallen off the bed onto a sewing machine. At trial, however, Ragan denied telling the officer that J. F. fell on the sewing machine and admitted that it was not even located in the room where the baby was sleeping. Officer Higginbotham placed Ragan under arrest.

Ragan was taken to the police station, where he agreed to provide a statement. Ragan's written statement, which was admitted at trial, contained a third explanation for J. F.'s injuries. According to Ragan's statement, he was changing the baby's diaper using Vase-

line, when J. F. "jerked," and Ragan's fingers went into the baby's rectum. The statement continued: "Then I put a diaper on him. Then he fell off the bed and I give [sic] him a cookie. He did not quit crying and I checked his diaper. And I see dodo [sic] and blood." Dr. Wittmer testified at trial that it was impossible for a baby to jerk so violently that a person's fingers would accidentally penetrate the rectum. Furthermore, Dr. Richardson testified that J. F.'s injuries could not have been caused by someone simply inserting his fingers into the baby's rectum.

At trial, Felker testified that she and Ragan practiced anal sex, that Ragan used a dildo to penetrate her, that Ragan inserted a dildo into his own rectum, and that Ragan owned and watched a pornographic video entitled "Bottom Dwellers," which depicted "anal sex and anal pleasure."

1. In the first two errors asserted by Ragan, he contends that the trial court erred in allowing evidence of his use of a dildo, his participation in acts of anal penetration, and his ownership of a pornographic video. We reject this argument.

We have consistently held in cases involving sex crimes against children that sexually explicit material has a tendency to demonstrate "a bent of mind toward similar sexual activity." (Punctuation omitted.) *Burris v. State*, 204 Ga. App. 806, 808 (1) (420 SE2d 582) (1992). Evidence of sexual material is admissible if it shows a defendant's "lustful disposition toward the sexual activity with which he is charged or his bent of mind to engage in that activity." *Simpson v. State*, 271 Ga. 772, 774 (1) (523 SE2d 320) (1999). Clearly, the pornographic video and the behavior described in the case sub judice were sufficiently linked to the behavior with which Ragan was charged, namely, the anal penetration of J. F. Accordingly, the trial court properly allowed the evidence.

2. Next, Ragan contends that the court erred in excluding evidence of an alleged appearance by Felker on an episode of "The Ricki Lake Show" concerning teenaged children who physically abused their parents. We disagree.

It is well settled that the admission of evidence is a matter which rests largely within the sound discretion of the trial judge. *Hudson v. State*, 273 Ga. 124, 126 (2) (538 SE2d 751) (2000). While Georgia law normally favors the admission of any relevant evidence, regardless of how slight its probative value may be, "[q]uestions of relevance are generally matters within the trial court's discretion, and it is not error to exclude evidence that is not related to an issue at trial." *American Assn. of Cab Cos. v. Olukoya*, 233 Ga. App. 731, 733 (1) (505 SE2d 761) (1998).

At trial, Ragan argued that the evidence of Felker's appearance on the talk show was relevant to show the type of household in which

she was raising J. F. However, the record showed that Felker and J. F. were residing in the home of Ragan's parents at the time of the incident. Thus, the trial court properly concluded that any information concerning Felker's prior living arrangements was irrelevant. See *Sleeth v. State*, 197 Ga. App. 349, 350 (3) (398 SE2d 298) (1990).

Ragan also argued that Felker's character was somehow probative of Ragan's guilt or innocence. This argument is without merit. Ragan contended at trial that his friend Giese may have attacked the baby; however, Ragan has never alleged that Felker may have harmed J. F. in any way. Therefore, Felker's character was not relevant to Ragan's guilt, and the evidence was properly excluded. See *Harwood v. State*, 195 Ga. App. 465, 466-467 (2) (394 SE2d 109) (1990).

3. Finally, Ragan argues that his conviction was "legally unsustainable" because it was based on circumstantial evidence. Essentially, Ragan contends that the evidence did not exclude his hypothesis that Giese actually injured J. F. Again, we reject Ragan's argument.

OCGA § 24-4-6 provides that "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." The Supreme Court has held that "[q]uestions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence." *Foster v. State*, 273 Ga. 34, 35 (1) (537 SE2d 659) (2000). Likewise, we have held that "[w]here the defendant offers an explanation of circumstantial facts or an alternative hypothesis of events, the reasonableness of that explanation is for the factfinder." *Dodson v. State*, 244 Ga. App. 94, 95 (534 SE2d 815) (2000). Where a jury has found that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis except that of guilt, its findings will not be disturbed unless the verdict is unsupportable as a matter of law. *Foster,* supra.

OCGA § 16-6-22.2 (b) provides that "[a] person commits the offense of aggravated sexual battery when he intentionally penetrates with a foreign object the . . . anus of another person without the consent of that person." Viewed in the light most favorable to the verdict, the evidence adduced at trial provided ample support for the jury's determination that Ragan was guilty of the offense charged. Specifically, the evidence showed that Ragan possessed a bent of mind toward the practice of anal penetration; that the victim had a foreign object repeatedly and forcibly inserted into his anus; that J. F. suffered the injuries while in Ragan's care; that Ragan owned a dildo consistent in size with the injuries to the baby; and that, when asked what happened to the baby, Ragan gave three conflicting explanations. The evidence further showed that Ragan threw the baby's

bloody diaper in the trash; that he began stripping the sheets from the bed where the baby had been sleeping before Felker, Mrs. Ragan, and the baby left for the hospital; and that the police discovered the sheets in the washing machine when they arrived at Ragan's home.

Ragan provided explanations for some of the circumstantial evidence against him; however, the jury is not obligated to accept a defendant's explanation of circumstantial facts. *Davis v. State*, 244 Ga. App. 670, 671 (536 SE2d 563) (2000). Because the jury was authorized by the evidence to find that every reasonable hypothesis except Ragan's guilt was excluded, we affirm the conviction.

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED JUNE 13, 2001.

*John P. Cannon*, for appellant.

*Kenneth B. Hodges III, District Attorney, Kathryn O. Fallin, Assistant District Attorney*, for appellee.