A03A0545. LUNSFORD v. THE STATE.
(581 SE2d 638)

MIKELL, Judge.

Steven Mark Lunsford was indicted on four counts of child molestation, two counts of aggravated assault, one count of possession of a firearm during the commission of a crime, and one count of unlawful possession of a dangerous weapon. A jury convicted him of two counts of child molestation, two counts of sexual battery, as lesser included offenses of child molestation and aggravated assault with intent to rape, one count of aggravated assault, and one count of possession of a firearm during the commission of a crime. Lunsford was acquitted of one count of child molestation and of unlawful possession of a dangerous weapon. The trial court sentenced him to thirty-five years to serve, with ten years to be served in confinement and the balance on probation. Lunsford timely filed a motion for new trial on April 24, 1997, which was denied on October 8, 2002. This appeal followed, in which Lunsford argues that the trial court erred in denying his motion for a directed verdict of acquittal on three of the child molestation counts, both aggravated assault charges, and the charge of possession of a firearm during the commission of a crime. He further assigns error to the admission of pornographic materials and "militia papers" into evidence and to a portion of the court's instruction to the jury. Finding no error, we affirm.

The standard of review for the denial of a motion for directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. Under that standard we view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve.

(Citation omitted.) *White v. State*, 250 Ga. App. 783 (552 SE2d 927) (2001). Accord *Pennington v. State*, 254 Ga. App. 837, 838 (564 SE2d 219) (2002), citing *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

So viewed, the evidence shows that on October 7, 1996, Lunsford was living with his wife, Tammy Lunsford, her 15-year-old daughter, S. T., and her 12-year-old son, C. K. Shortly after Tammy left for work that morning, Lunsford encountered S. T. in the kitchen. According to a statement he provided to the authorities after waiving his *Miranda* rights, Lunsford and his stepdaughter, who was wearing a t-shirt and panties, began "wrestling around together" and "wound up" in a bedroom adjoining the kitchen. Lunsford admitted that at that point, he pulled off S. T.'s panties and started fondling her. According to Lunsford, S. T. told him to stop, and he did. Detective Lisa Mathis of the Catoosa County Sheriff's Department interviewed the victim and testified that S. T. reported feeling a hard object in her vaginal area that she believed was either Lunsford's finger or his penis.[1] There was also evidence that Lunsford sucked on S. T.'s neck, leaving a "hickey," a photograph of which was admitted at trial.

After S. T. fled from Lunsford, he went into his bedroom and cut his wrists with a box cutter. S. T. called her mother at work, and Tammy immediately returned home. She first encountered S. T. and sent her out to the car. Next, Tammy found Lunsford in their bedroom "covered in blood." She testified that Lunsford put a gun to his head and said that he was going to kill himself. Tammy walked into the living room and called 911. While she was talking to the dispatcher, Lunsford shot the telephone that Tammy was using. Having heard the gunshot, S. T. came back into the house. Tammy quickly ushered her daughter back to the car, where she told her to lie on the floor because "if he's crazy enough to do this[,] there's no telling what he's going to do." Tammy and S. T. drove to the police department. In

---

[1] A videotape of the interview with S. T. was played for the jury at trial; however, neither the videotape nor a transcript of the interview has been included in the appellate record.

his statement to the police, Lunsford admitted that he shot the telephone on which his wife was speaking.

Officer Eddie Hullender of the Catoosa County Sheriff's Department testified that he responded to the 911 call and was told that an attempted rape and an attempted suicide had taken place. When he arrived at Lunsford's residence, Officer Hullender observed "blood everywhere," but no one was at home.

In his statement, Lunsford reported that after slashing his wrists a second time, he drove to a nearby wooded area, where he lost consciousness. He returned home at approximately 7:30 p.m. and called 911. Officer Terry Knowles responded to the call and found Lunsford sitting inside his home, suffering from lacerations to his arms. Lunsford told the officer that he needed help.

While searching the residence, officers discovered a handwritten note from Lunsford to Tammy, in which he apologized for his behavior and claimed that he was sick. They also found pornographic materials, including a videotape labeled "Dirty Debutantes." Additionally, the officers discovered ammunition, firearms, a hand grenade, "militia papers," and a pipe bomb.

1. First, Lunsford argues that the trial court erred in denying his motion for a directed verdict of acquittal on three of the four child molestation charges. He contends that the state could not charge him with four counts of molestation arising out of the same transaction. We disagree.

According to OCGA § 16-6-4 (a), the offense of child molestation is defined as an "immoral or indecent act [done] to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person." In this case, the indictment alleged four separate immoral or indecent acts committed by Lunsford with the intent to arouse or satisfy his own sexual desires: Count 1 charged Lunsford with kissing and sucking on S. T.'s neck; Count 2 alleged that he wrestled with S. T. on a bed and removed her panties; Count 3 alleged that he attempted to penetrate S. T.'s sexual organs with his penis; and Count 4 charged that he attempted to penetrate S. T.'s sexual organs with his finger.[2] While OCGA § 16-1-7 (a) prohibits multiple convictions for the same conduct, it also provides that "[w]hen the same conduct of an accused may establish the commission of more than one crime, the accused may be prosecuted for each crime." Accordingly, the court did not err in permitting the state to prosecute Lunsford on all four counts.

Furthermore, the crimes contained in Counts 1 and 2 did not

---

[2] The jury acquitted Lunsford of the charge contained in Count 3 and convicted him of the lesser included offense of sexual battery with respect to Count 4.

merge for sentencing purposes because they involved different conduct. Specifically, Count 1 required proof that Lunsford kissed and sucked on S. T.'s neck, while Count 2 required proof that he wrestled with the victim on a bed and removed her panties. In other words, in proving one offense, the state did not "use up" evidence necessary to prove the other. See *Brown v. State*, 246 Ga. App. 60, 64 (1) (539 SE2d 545) (2000); *Robinson v. State*, 210 Ga. App. 175, 176-177 (2) (435 SE2d 466) (1993); OCGA § 16-1-6 (1). Accordingly, the two offenses did not merge.

Finally, to the extent that Lunsford contends that the evidence demanded a directed verdict of acquittal, we reject his argument and affirm the conviction. Viewing the evidence summarized above in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found the essential elements of the charged offenses beyond a reasonable doubt. See *White*, supra.

2. Next, Lunsford argues that the trial court should have granted a directed verdict on Count 6, which charged him with the aggravated assault of Tammy "by shooting the phone on which she was talking." He bases his argument on the following testimony given by Tammy: "I was never at any point afraid of him. He wasn't a good shot. When he shot the phone I knew he wasn't shooting me. . . . I just knew he wouldn't hurt me." Lunsford argues that because Tammy did not have a reasonable apprehension of harm, an aggravated assault did not occur. We disagree.

Simple assault is defined as "an act which places another in reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-20 (a) (2). An assault becomes aggravated when it is committed with a deadly weapon. OCGA § 16-5-21 (a) (2). Thus, "if the victim is in reasonable apprehension of an immediate violent injury from a weapon, an aggravated assault has occurred. Because reasonable apprehension of injury is not the same as simple fear, the testimony that the victim was not afraid of the defendant does not preclude conviction." (Citations omitted.) *Carter v. State*, 248 Ga. App. 139 (1) (546 SE2d 5) (2001); *Hicks v. State*, 211 Ga. App. 370, 373 (1) (439 SE2d 56) (1993).

Tammy testified that when S. T. came back into the house after hearing the gunshot, "I turned to put her in front of me just in case and out the door she went and I made her get in the car and get in the floorboard." She further testified that she told her daughter "if he's crazy enough to do this there's no telling what he's going to do." In his statement to the police, Lunsford admitted that after he fired the shot into the telephone, Tammy ran out of the house. This evidence demonstrates that Tammy had a reasonable apprehension of injury and that she took measured steps to protect herself and her daughter. Accordingly, the evidence was sufficient under *Jackson v.*

*Virginia,* supra, and the trial court did not err in denying the motion for directed verdict on this count. See *Carter,* supra at 140.

3. In a related error, Lunsford contends that a directed verdict was warranted on the charge of possession of a firearm during the commission of a felony because the alleged aggravated assault on which that charge was predicated did not occur. Based on our holding in Division 2 that there was sufficient evidence to support Lunsford's conviction of aggravated assault, this error is without merit. Lunsford does not challenge the fact that he possessed a firearm when he shot the telephone on which Tammy was speaking.

4. Next, Lunsford argues that the trial court erred in admitting "militia papers" and pornographic materials that were found in his home. He summarily contends that the complained-of evidence was highly prejudicial and was admitted for no lawful purpose.

First, Lunsford has failed to demonstrate that the "militia papers" were admitted in error. The documentary evidence introduced by the state included articles urging citizens to arm themselves against the government. This evidence was admitted in support of Count 8, which charged Lunsford with the unlawful possession of a live hand grenade. Lunsford enumerates the admission of these "militia papers" as error; however, he has failed to support this assertion with argument or citation of authority. Accordingly, this alleged error is deemed abandoned pursuant to Court of Appeals Rule 27 (c) (2).

Furthermore, the court's admission of the pornographic materials does not require reversal of Lunsford's conviction. The record shows that the court admitted evidence of a videotape labeled "Dirty Debutantes," another videotape labeled "ADULT XXX RATED," and various pornographic magazines found in Lunsford's home. He argues that this evidence was inadmissible under *Simpson v. State,* 271 Ga. 772 (523 SE2d 320) (1999), and its progeny.

In *Simpson,* which was decided two years after Lunsford's trial,[3] our Supreme Court put forth the following rule:

> In a prosecution for a sexual offense, evidence of sexual paraphernalia found in defendant's possession is inadmissible unless it shows defendant's lustful disposition toward the sexual activity with which he is charged or his bent of mind to engage in that activity. Under this rule, sexually explicit material cannot be introduced merely to show a defendant's

---

[3] "The Supreme Court in *Simpson* modified a rule of evidence, which was procedural, and the new rule therefore may be applied retroactively." *McDonald v. State,* 249 Ga. App. 1, 3 (1) (548 SE2d 361) (2001).

interest in sexual activity. It can only be admitted if it can be linked to the crime charged.

Id. at 774 (1). The admission of the "Dirty Debutantes" videotape was not in error, as it illustrated Lunsford's interest in sexual activities involving young women. See *Ragan v. State*, 250 Ga. App. 89, 91 (1) (550 SE2d 476) (2001). But Lunsford is correct that the trial court erred in admitting other pornographic materials that did not directly demonstrate his propensity for the sexual activities alleged in this particular case. However, in light of the overwhelming evidence against him, including his own statement admitting that he wrestled with S. T., removed her panties, and fondled her, any error was harmless. Compare *Frazier v. State*, 241 Ga. App. 125, 126-127 (1) (524 SE2d 768) (1999). Significantly, the jury did not convict Lunsford of the two counts of child molestation alleging that he attempted to penetrate S. T.'s vagina with his penis or finger. Accordingly, any error in admitting the pornographic materials other than the "Dirty Debutantes" videotape was harmless and presents no basis for reversal.

5. Finally, Lunsford's argument that the trial court improperly commented on the evidence is without merit. During deliberations, the jurors asked the court to recharge them on the definition of aggravated assault. After defining that offense, the court instructed the jury as follows:

Now, as to Count Six, aggravated assault with a deadly weapon, I instruct you that intentionally firing a gun at another absent justification is sufficient in and of itself to support a conviction for aggravated assault assuming the jury finds that beyond a reasonable doubt.

Lunsford contends that the trial judge essentially suggested to the jury that a conviction was warranted in violation of OCGA § 17-8-57. We disagree.

The objected-to language was a correct statement of the law. Georgia courts have repeatedly held that "[i]ntentionally firing a gun at another, absent justification, is sufficient in and of itself to support a conviction of aggravated assault." (Citation and punctuation omitted.) *Love v. State*, 268 Ga. 484, 485 (1) (490 SE2d 88) (1997); *Steele v. State*, 196 Ga. App. 330, 331 (2) (396 SE2d 4) (1990). Accord *Butura v. State*, 239 Ga. App. 132, 133 (1) (519 SE2d 18) (1999); *Goodman v. State*, 237 Ga. App. 795, 796 (516 SE2d 824) (1999).

Furthermore, the trial court made it clear in its instruction that whether Lunsford committed aggravated assault by intentionally firing a gun at Tammy without justification was a matter for the jury to

decide beyond a reasonable doubt. "The trial court's jury instruction did not assume certain things as fact and did not intimate to the jury what the trial court believed the evidence to be; therefore, the contested language does not constitute an impermissible judicial comment on the evidence." *Murphy v. State*, 270 Ga. 72, 75 (2) (e) (508 SE2d 399) (1998), citing *Jones v. State*, 268 Ga. 12, 15-16 (5) (483 SE2d 871) (1997).

*Judgment affirmed. Johnson, P. J., and Eldridge, J., concur.*

DECIDED APRIL 10, 2003.

*Sawyer & Sawyer, Horace K. Sawyer III*, for appellant.
*Herbert E. Franklin, Jr., District Attorney*, for appellee.