## A09A2293. VIERS v. THE STATE.
(693 SE2d 526)

DOYLE, Judge.

Following a jury trial,[1] Irvin S. Viers was convicted of aggravated sexual battery[2] and cruelty to a child.[3] Viers appeals pro se, arguing that the evidence was insufficient to support the aggravated sexual battery conviction and that he received ineffective assistance of counsel. We affirm, for reasons that follow.

> On appeal from a criminal conviction, the defendant no longer enjoys the presumption of innocence. This Court does not weigh the evidence or determine witness credibility, but only determines whether the evidence, viewed in the light most favorable to the jury's verdict, is sufficient under *Jackson v. Virginia*.[4] We uphold the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[5]

So viewed, the evidence shows that on May 9, 2001, Viers and his wife, Terena, brought their two-and-a-half-year-old daughter, H. V., to the emergency room at Habersham County Medical Center. Viers was carrying the child, who was wrapped in a blanket. When Wendy Blackwell, the treating nurse, asked Viers what had happened to H. V., he told her that the child "had fallen down some steps" approximately half an hour before and that "[s]he [had] no broken bones, but she [was] bleeding from her vaginal area." `H. V. was naked under the blanket with a white bath towel between her legs. She had grass and twigs in her perineal and groin area, but none in her hair, which was wet. Blackwell observed multiple bruises and marks on H. V.'s abdomen, upper arms, upper torso, and upper thighs, some of which appeared to be old and healing, while others were fresh; Blackwell noted that some of the bruises were in the shape of a hand print. There were no bruises or marks on H. V.'s face, arms, lower legs, or shoulders. Blackwell also observed a five- to

---

[1] Viers was tried with his wife, Terena Viers, who was also charged.

[2] OCGA § 16-6-22.2 (b).

[3] OCGA § 16-5-70 (b).

[4] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[5] (Punctuation omitted.) *Barnes v. State*, 299 Ga. App. 253 (682 SE2d 359) (2009).

388

six-centimeter laceration on H.V.'s perineal area that was bleeding, along with multiple smaller lacerations to the right of her vaginal area and multiple small lacerations on her mid-chest area extending to her upper thighs. While at the hospital, in addition to his initial claim that H. V. fell down some steps, Viers also told Blackwell that she fell out of a window and that a dog had her groin in his mouth when he and Terena found the child. Terena told Blackwell that H. V. had rolled down a hill.

The police tested H. V.'s car seat and found traces of blood, which matched H. V.'s DNA. They also found blood in the bathroom of the house where H. V. was injured. The diaper that H. V. was wearing immediately before she went to the hospital had holes in it and was dirty and ripped. H. V.'s clothes, which the Viers turned in to the hospital, were wet and the pants had holes in them in the bottom; the clothing did not test positive for blood, however.

The authorities interviewed Terena, who gave a statement indicating that she found H. V. outside, quiet, naked, and bleeding, and that a dog was licking the toddler between her legs. Terena stated that H. V. rode to the hospital in Viers's lap instead of in her car seat. According to Terena, Viers washed the car seat while H. V. was being treated at the hospital. Terena also admitted to the police that she struck H. V. with her hand and a hickory switch because she was angry with her.

Law enforcement also interviewed Viers, who stated that he thought H. V. fell off the porch into the bushes; Viers also suggested that perhaps a stranger injured H. V. According to one investigator, Viers stated that he washed H. V.'s car seat while she was in the hospital, and this assertion was confirmed by another investigator.

Dr. Roger Pitt, the pediatric surgeon who performed corrective surgery on H. V.'s perineum, testified that she had multiple diffuse bruises on her trunk extending down onto her legs and superficial lacerations. H. V. also had an injury to her perineal area, between her vagina and anal opening, which was caused by significant force. Dr. Pitt testified that H. V.'s injuries were not consistent with a fall from the porch depicted in photographs, and he did not believe that her injuries were caused by a dog. Dr. Pitt opined that her injuries were consistent with abuse and could have been caused by repeated penetration with a stick. He also stated that the circular bruises on H. V.'s right leg were consistent with a stick being used to punch at her upper thigh. On cross-examination, Dr. Pitt conceded that H. V.'s injuries could have been caused "by a significant straddle injury," and stated that some of her lacerations were "consistent with a hickory [switch] being used . . . across her torso, across her buttocks, across her back."

Dr. Steven Dunton, a forensic pediatrician who examined H. V. at Children's Healthcare of Atlanta the day after surgery on her perineum, testified that he observed lacerations in H. V.'s anus. When questioned about the cause of the child's injury, Dr. Dunton testified as follows:

> Did a dog bite cause this? The answer is no. Did a fall down the steps cause this? The answer is no. Did a fall into bushes cause this? I very much doubt it. The possibility remains that this child may have received what is called a straddle injury, where a child falls, and you typically see it on a playground or under a bicycle or something like that, where that area between the genitalia and the anus strikes something hard and can bruise or lacerate the skin. I was not supplied a history that would suggest that a straddle injury had happened, but I cannot rule it out.

According to Dr. Dunton, H. V.'s injuries were consistent with sexual abuse and insertion of a stick into her anus.

Dr. Nancy Aldridge met with H. V. six times and conducted a forensic evaluation of the child. During the interviews, H. V. indicated that she had "boo-boos" on various parts of her body, indicating on dolls that they were on her arms, abdomen, buttocks, and vaginal and genital areas. H. V. told Dr. Aldridge that her "da-da" caused the boo-boo in her vaginal area.[6] When Dr. Aldridge asked her what her father had used to hurt her, H. V. replied that he used a stick from the front yard on one occasion and a bat at another time. According to Dr. Aldridge, H. V. indicated that her vaginal injury occurred after she had a dirty diaper.

H. V.'s foster father, Dennis Abercrombie, testified that H. V. seemed afraid of men and tentative around women. She also had frequent nightmares and would become hysterical after soiling her diaper. On one occasion, while looking at photographs of her family, H. V. volunteered that "Daddy hurt [her] boo-boo."

Viers testified that he was at his sister-in-law's house when Terena yelled that H. V. was bleeding. Viers ran outside, where he found H. V. on the ground on her side, with the dog leaning over her. H. V.'s pants were pulled down to her knees, and she was "kicking, propelling herself away from the dog." The Viers rushed H. V. to the hospital, with Viers holding her in the back seat; he took off H. V.'s clothes in the car so he could examine her injuries. Viers testified that H. V. had grass in her hair, but he pulled it all out on the way

---

[6] Dr. Aldridge testified that H. V. referred to Viers as her "da-da."

to the hospital. Viers stated that he asked H. V. what happened, and she replied, "Fall down, doggie." Viers also stated that before he gave H. V.'s clothing to the hospital staff, he set them on the sink so he could fill a glass with water for Terena, and water splashed onto the clothes. Viers denied ever telling authorities that he washed H. V.'s car seat.

At the conclusion of the trial, the jury found Viers guilty of aggravated sexual battery and cruelty to a child, and it found Terena guilty of cruelty to a child and not guilty of aggravated sexual battery.[7] This appeal followed.

1. Viers challenges the sufficiency of the evidence as to Count 1, aggravated sexual battery. Specifically, he argues that his conviction was based on circumstantial evidence and that the evidence did not exclude the hypothesis that H. V. suffered a "straddle injury," which both Dr. Pitt and Dr. Dunton testified were possibilities.

> OCGA § 24-4-6 provides that "(t)o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." The Supreme Court has held that questions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence. Likewise, we have held that where the defendant offers an explanation of circumstantial facts or an alternative hypothesis of events, the reasonableness of that explanation is for the factfinder. Where a jury has found that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis except that of guilt, its findings will not be disturbed unless the verdict is unsupportable as a matter of law.[8]

"A person commits the offense of aggravated sexual battery when he . . . intentionally penetrates with a foreign object the sexual organ or anus of another person without the consent of that person."[9] Viewed in the light most favorable to the verdict, the evidence provided sufficient support for the jury's determination that Viers was guilty of aggravated sexual battery. Specifically, the evidence showed that H. V. sustained bruises and lacerations, including a large laceration to her perineal area, which witnesses testified

---

[7] The State also charged Viers with two counts of aggravated child molestation, but the trial court directed a verdict as to those counts.

[8] (Citations and punctuation omitted.) *Ragan v. State*, 250 Ga. App. 89, 92 (3) (550 SE2d 476) (2001).

[9] OCGA § 16-6-22.2 (b).

were consistent with anal penetration. Police found blood in the child's car seat, which was inconsistent with the testimony and statements of Viers and Terena that H. V. was injured after she exited the car (and that she did not sit in the car seat en route to the hospital). H. V.'s hair and clothing were wet when she arrived at the hospital, and the police found blood in the bathroom of the house where the injury occurred. The toddler had grass and twigs in her genital area, but none in her hair. Her clothing and diaper had holes in them in the genital area. And H. V. told both Dr. Aldridge and Abercrombie that Viers hurt her "boo-boo." Finally, Viers gave multiple conflicting explanations for H. V.'s injuries, none of which was supported by the evidence. Given this evidence, the jury was authorized to exclude every reasonable hypothesis save that of Viers's guilt.[10]

2. Viers also alleges that he received ineffective assistance of counsel at trial. We disagree.

> In order to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*,[11] [Viers] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance.[12]

The trial judge, who oversaw the trial and heard the evidence presented at the hearing on the motion for new trial, makes the findings on whether the performance was deficient and whether it prejudiced the defendant, findings that this Court does not disturb unless clearly erroneous. In evaluating an attorney's performance, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. We will not reverse on the basis of ineffective assistance of counsel unless trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial court could not reliably have produced a just result.[13]

Viers makes three specific arguments regarding his claim of ineffective assistance of counsel, which we will address separately.

(a) First, Viers contends that trial counsel was ineffective by

---

[10] See *Vaughn v. State*, 301 Ga. App. 391 (687 SE2d 651) (2009); *Ragan*, 250 Ga. App. at 92 (3).

[11] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[12] (Citations and punctuation omitted.) *Devega v. State*, 286 Ga. 448, 450 (4) (a) (689 SE2d 293) (2010).

[13] (Footnotes omitted.) *Smith v. State*, 302 Ga. App. 222, 226 (3) (690 SE2d 867) (2010).

392

failing to object to the following opinion testimony offered by Dr. Aldridge during cross-examination by Viers's trial counsel:

> Q: Now, again, going back to your conclusions. Your conclusion was that the only person she accused was her father of hurting her? That would be the last sentence of your summary and conclusions?
>
> A: Yes, sir. But if you go up to another sentence, I had indicated that it was most likely that she was physically abused by her mother and her father.

Viers argues that Dr. Aldridge's response was an improper opinion on the ultimate issue in question, and therefore trial counsel's failure to object thereto constituted ineffective assistance of counsel.

We disagree with Viers's characterization of Dr. Aldridge's testimony. When read in context with the question posed by Viers's counsel, it is clear that Dr. Aldridge was not expressing an opinion regarding whether the abuse occurred, but instead explaining that H. V. had accused both parents of abuse, as opposed to merely her father.[14]

Nevertheless, pretermitting whether Dr. Aldridge's response to questioning constituted a comment on the ultimate issue in the case and whether trial counsel's decision not to object thereto constituted ineffective assistance of counsel, "it does not require reversal because [Viers] has failed to establish that the testimony so prejudiced his defense as to affect the outcome of his trial."[15] We are not persuaded that Dr. Aldridge's response was so significant that there is a reasonable probability that the outcome of the trial would have been different if counsel had objected thereto, especially in light of the physicians' testimony regarding H. V.'s injuries, the inconsistencies in Viers's various versions of events, the blood found in the car seat, and the testimony and photographs — which the jury viewed — regarding the bruises and lacerations on H. V.[16] Thus, the trial court did not err in denying Viers's motion for new trial on this basis.

(b) Citing *Bruton v. United States*,[17] Viers claims that trial counsel was ineffective by failing to object when an investigator testified about certain statements made by Terena because he was

---

[14] At the beginning of direct examination, the prosecutor specifically advised Dr. Aldridge that "I will never ask you a question that requires your opinion as to whether or not this child is telling the truth. Okay?" And Dr. Aldridge responded, "Yes, sir."

[15] *Gosnell v. State*, 247 Ga. App. 508, 511-512 (3) (544 SE2d 477) (2001).

[16] See *Petty v. State*, 260 Ga. App. 38, 42 (2) (b) (579 SE2d 23) (2003); *Gosnell*, 247 Ga. App. at 511-512 (3).

[17] 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968).

unable to cross-examine her. Viers takes issue with the following statements made by Terena to the investigator: (1) Viers and Terena left home, dropped a friend off at church, and then returned home to change H. V.'s clothes before going to Viers's sister-in-law's house, which contradicted Viers's assertion that they did not return home before going to his sister-in-law's house; (2) Viers and Terena went into the sister-in-law's house and left H. V. outside, which was contrary to Viers's testimony that H. V. initially went inside with them and then wandered out unbeknownst to the adults; and (3) Viers washed H. V.'s car seat while H. V. was in the hospital, an action which Viers adamantly denies. We find this argument meritless.

> [T]he Supreme Court of Georgia has held that *Bruton* only excludes statements by a non-testifying co-defendant that directly inculpate the defendant, and that *Bruton* is not violated if a co-defendant's statement does not incriminate the defendant on its face and only becomes incriminating when linked with other evidence at trial.[18]

Terena's statements would not, standing alone, incriminate Viers.

Moreover, as we concluded in Division 2 (a), given the evidence — including the cumulative testimony by two law enforcement officers that Viers stated that he had cleaned the car seat — submitted in this case, we are not persuaded that there is a reasonable probability that the outcome of the trial would have been different but for the testimony of the investigator regarding Terena's statements.

(c) In his final enumeration, Viers claims that trial counsel was ineffective by failing to object to Dr. Aldridge's and Abercrombie's testimony regarding H. V.'s out-of-court statements, arguing that the testimony lacked sufficient indicia of reliability. Pretermitting whether the testimony was admissible, however, Viers has failed to establish a basis for reversal based on ineffective assistance of counsel.

At the motion for new trial hearing, trial counsel testified that he did not object to the testimony regarding H. V.'s out-of-court statements because

> [TRIAL COUNSEL]: I didn't see really an issue of indicia of reliability. I think I had addressed that fact with the extreme youth of the child[.] [T]he extremely low age of the child[ ] was a factor in my cross-examination of Ms. Aldridge

---

[18] (Punctuation omitted.) *Sarratt v. State*, 299 Ga. App. 568, 571-572 (2) (d) (683 SE2d 10) (2009).

and my argument to the jury, I think. And I didn't object on the basis of indicia of reliability because I wanted to make those arguments to the jury itself.

. . .

I didn't specifically feel that there was enough indicia of — that there wasn't enough indicia of reliability in order to have those statements suppressed so much as I thought that we would be able to argue to the jury that it took ten sessions to get anything said. The child was so young, and therefore it was inherent to the jury, in argument to the jury, that whether you can believe anything that was said or not said by the child because of the repeated ten trips to the doctor. We had Dr. Stark come in and test — who actually trained Ms. Aldridge — come in and testify about the fact that a forensic interview should be one interview, not ten interviews, and things of that nature.

[STATE]: Mr. Powell, do you agree based on that statement just now, that you made your opinion not to make the motion or objection . . . to indicia because you were gonna use it another way?

[TRIAL COUNSEL]: Yes. . . .

"There is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance, and that any challenged action by trial counsel might be considered sound trial strategy. Counsel's decisions on matters of tactic and strategy, even if unwise, do not amount to ineffective assistance of counsel."[19] Clearly, trial counsel made a strategic decision to attack the reliability of H. V.'s statements during closing argument and with the testimony of Dr. Stark criticizing Dr. Aldridge's interview techniques. Thus, Viers has not established that the trial court erred in denying his motion for new trial on this basis.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED MARCH 8, 2010 —
RECONSIDERATION DENIED APRIL 2, 2010.

Irvin S. Viers, *pro se*.

---

[19] (Citation and punctuation omitted.) *Cupe v. State*, 253 Ga. App. 851, 855 (3) (a) (560 SE2d 700) (2002).

*Brian M. Rickman, District Attorney*, for appellee.