## A11A2402. HECK v. THE STATE.

(722 SE2d 166)

ELLINGTON, Judge.

A Dougherty County jury found Alfred Heck guilty beyond a reasonable doubt of three counts of child molestation, OCGA § 16-6-4 (a) (1), and one count of enticing a child for indecent purposes, OCGA § 16-6-5 (a). He appeals from the denial of his motion for new trial, asserting that the trial court abused its discretion in denying his motion to sever one of the child molestation counts from the other indicted offenses and in admitting certain "irrelevant, non-sexually explicit exhibits" as evidence at trial. Heck also contends that he was denied the effective assistance of trial counsel. For the following reasons, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows the following facts. In September and October 2001, Heck was 50 years old, used a motorized wheelchair, and was known by the nickname "Bubba." He lived by himself in the Paradise Village mobile home park, which is located in Dougherty County. A woman and her 11-year-old son, S. A., lived next door to Heck. The boy felt sorry for Heck and decided to try to be his friend. S. A. began to spend a lot of time at Heck's house playing video games. Over the next few weeks, Heck invited S. A. to spend the night at his house at least three times; the boy's mother allowed him to stay over twice because S. A. seemed to enjoy it, she thought that Heck's sister was going to be present, and she did not perceive Heck as a threat. When Heck asked S. A.'s mother on the third occasion, however, the boy told her that he did not want to go. When the mother asked her son to tell her why he no longer wanted to go to Heck's house, he simply said that he did not want to go. Around the same time, S. A.'s mood changed, and he began to soil himself and his clothes regularly at home and at school. When asked what was wrong, S. A. responded that he did not know.

In November 2001, S. A. and his mother moved away from Paradise Village. Then, on May 2, 2002, the mother received a phone call from a friend who still lived there and who knew that her son had spent time with Heck inside his house. The friend informed S. A.'s mother that he had learned that Heck was a registered sex offender, and he asked her if she knew whether Heck had "messed with" the boy. The mother immediately asked her son, "Has Bubba ever messed with you?" S. A. lowered his head, started to cry, and responded, "Yes, ma'am." The boy told his mother that Heck had "played" with his penis and had kissed him on the mouth, and, when

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

asked why he did not call her from Heck's house, S. A. said that Heck would not let him.[2]

The mother called the police, who referred her to a center for children who have disclosed physical and/or sexual abuse, where a forensic interviewer conducted a videotaped interview of S. A. The videotape was played for the jury without objection. During the interview, S. A. revealed that Heck had touched his (the boy's) penis and buttocks with his hands and that he (the boy) had touched Heck's penis with his hands. S. A. also stated that Heck had shown him a pornographic videotape that showed two women having sexual intercourse with a man and that there were "adult" magazines in Heck's bathroom.

Based upon S. A.'s interview statements, police officers went to Heck's residence on May 3, 2002, where they conducted a search pursuant to his consent. According to one of the officers, almost all of Heck's furniture and belongings, including his bed, a television and a videotape recorder, were in his master bedroom; the master bathroom was only accessible by walking through Heck's bedroom. In the master bedroom, officers found the following items: a pornographic videotape that was consistent with that described by S. A.;[3] a foreign videotape depicting "nudist colonies" that showed naked people of various ages, from toddlers to senior citizens, swimming together and riding on water slides; and an envelope addressed to Heck that contained a brochure with color photographs of naked children and adults and a form that could be used to order videotapes of nudist colonies. In addition, even though Heck lived alone and had no children, his bedroom contained numerous children's live action and animated videotapes; a bag of "lollipops" in Heck's dresser drawer; two boxes of children's toys; a comic book and a children's cookbook; and approximately twenty parenting and family-oriented magazines that primarily depicted infants and preschool-age children. There were also two photographs of S. A. on the wall above the television. In Heck's master bathroom, the officers found a "Hustler" pornographic magazine, and, under the sink, they found a plastic bag with 15 pairs of folded, soiled little girls' panties and a separate bag containing several small plastic hair barrettes.

On the same day, after the search was completed, an investigator

---

[2] The boy's mother later learned that, during at least one of the two sleepovers, Heck's sister left the trailer during the night, so that Heck was alone with S. A., but, when S. A. tried to go home, Heck would not let him.

[3] Although the pornographic videotape was not played for the jury, an officer who had viewed the videotape testified that it appeared that someone had altered it by adding numerous recordings of children's television commercials to the tape and distributing the commercials among the pornographic scenes.

conducted a videotaped interview of Heck; pursuant to the request of defense counsel, the entire interview was played for the jury at trial. According to the investigator who conducted the interview, Heck admitted, among other things, that S. A. slept in the bed with him during their sleepovers and that they would "wrestle" while in bed. Heck said that S. A. may have seen his penis when he (Heck) was in the bathroom. He also admitted that the nudism and pornographic videotapes belonged to him and that he showed the pornographic tape to S. A. three or four times. In addition, Heck told the investigator that he experiences sexual urges toward children and that he takes a prescribed medication that causes sexual dysfunction in order to help control those urges. He denied, however, that he had molested S. A., and he claimed that the panties that were found under his sink belonged to his niece's children. Following the interview, Heck was arrested.

Several days later, the investigator received a report from a woman who told him that her granddaughter, S. B., who was slightly less than three years old, had been molested by Heck inside his trailer on or about May 1, which was just before Heck's arrest. S. B.'s father testified at trial that he lived in Paradise Village and, on the day of the molestation, he was watching his daughter and his two stepsons as they were playing with other children at the neighborhood's playground. He went back to his home to get a telephone and to use the bathroom and, when he returned to the playground about ten minutes later, his children were not there. At trial, one of the man's stepsons testified that Heck had come to the playground, had put S. B. on his lap in his wheelchair, and had taken her inside his house; the stepson followed them there and went inside, also. When the man's other stepson saw Heck and S. B. leave the playground, he ran home and told his stepfather that "Bubba" had taken S. B. The man started looking for his daughter and found her as she was walking away from Heck's home. S. B. immediately told her father that Heck had picked her up, put her in his lap, and rubbed her "like this," which she demonstrated by rubbing her vaginal area with her hand. When S. B.'s father checked her genital area, he saw that it was very red. Over the next few days, S. B. repeatedly, and sometimes spontaneously, told her mother, stepmother and grandparents that "Bubba" had put his hand in her "panties" and had touched her genitals. After the police were notified, S. B. told a forensic interviewer that "Bubba" had touched her "pee-pee." A videotape of the interview was played for the jury at trial.

In addition to this evidence, the State showed that, since 1969, Heck had molested several other children, that Heck had previously been incarcerated in Georgia as a consequence of his convictions for child molestation and related crimes, and that Heck was a registered

sex offender in the state. Specifically, the State presented similar transaction evidence to show that Heck had previously molested his thirteen-year-old stepdaughter, her eight-year-old cousin, and her fifteen-year-old best friend, as well as two sisters, ages two and eight, who lived next door to him.

1. On appeal from his convictions, Heck contends that the trial court erred in denying his motion to sever the trial on Count 4 of the indictment from the trial on Counts 1 to 3.[4] He claims that severance was necessary to prevent prejudice and to ensure that the jury was able to consider each offense separately on its own merits, arguing that Count 4 was unrelated to the other counts, was based on different facts, involved a child of a different age and gender, and would have been inadmissible at the trial of the other offenses. Following a hearing, the trial court denied the motion.

"Severance is required if offenses are joined *solely* because they are similar in nature. Severance is not mandated, however, where the similarity of the offenses is coupled with evidence of a pattern which shows a common motive, plan, scheme, or bent of mind." (Citation and punctuation omitted; emphasis supplied.) *Boatright v. State*, 308 Ga. App. 266, 273 (2) (707 SE2d 158) (2011). In other words, offenses have not been joined *solely* because they are of the same or similar character when the evidence of one offense can be admitted as similar transaction evidence during the trial of the other offense. *Stewart v. State*, 277 Ga. 138, 140 (587 SE2d 602) (2003). It follows that severance is not mandatory in such a case. *Dickerson v. State*, 304 Ga. App. 762, 765 (1) (697 SE2d 874) (2010).

This does not end the inquiry, however, because, while the fact that evidence of one offense would be admissible in a trial of another offense is a relevant consideration in determining whether to sever, "[a] trial court must still determine if severance of the offenses would promote a fair and intelligent determination of guilt or innocence as to each offense." (Citation and punctuation omitted.) *Heard v. State*, 287 Ga. 554, 559 (4) (697 SE2d 811) (2010). In making that determination, the court should consider "whether[,] in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense." (Citation and punctuation omitted.) *Dickerson v. State*, 304 Ga. App. at 764

---

[4] The record shows that Heck was indicted for committing two counts of child molestation between September 1 and October 31, 2001, when he fondled the penis of S. A. and made S. A. fondle his (Heck's) penis. The indictment also charged Heck with enticing a child for indecent purposes based on his taking S. A. into his (Heck's) bedroom for the purpose of molesting him. In addition, Count 4 of the indictment alleged that Heck molested S. B. by fondling her vaginal area on or about May 1, 2002.

(1). See *Loyless v. State*, 210 Ga. App. 693, 695 (3) (436 SE2d 814) (1993) (accord).

As the trial court found in this case, the trial involved only four charged crimes, and neither the facts surrounding the offenses, nor the evidence presented to prove such facts, was complicated. Thus, Heck failed to demonstrate that there was any danger that the jury would be confused or unable to distinguish the evidence and apply the law intelligently as to each offense. *Dickerson v. State*, 304 Ga. App. at 764 (1); *Loyless v. State*, 210 Ga. App. at 695 (3).

Further, not only did two of the indicted offenses involve the same kind of conduct (the fondling of each victim's genital area), both of the victims were children who were neighbors of Heck, and all of the offenses occurred at the same place (Heck's bedroom inside his home in Paradise Village) and within months of one another. Thus, even if the trial court had severed the trials, the molestation of each child would have been admissible as a similar transaction — to show Heck's intent and bent of mind to commit an illegal act to satisfy his sexual desires and his pattern of enticing children to come to a private place (his bedroom) to "play" so that he can commit such acts — at the trial on the charges involving the other child. See *Butler v. State*, 311 Ga. App. 873, 876-877 (1) (717 SE2d 649) (2011) ("[S]exual molestation of young children, as well as teenagers, regardless of sex or type of act, is sufficient similarity to make the evidence admissible. . . . [B]ecause of the liberal admission of similar transaction evidence in cases involving sexual offenses, especially those against children or teenagers, a certified copy of a prior conviction for a sex crime against a child may, *with no other evidence*, sufficiently prove that the prior crime is similar to the current crime.") (punctuation and footnotes omitted; emphasis in original); *Hostetler v. State*, 261 Ga. App. 237, 239 (1) (582 SE2d 197) (2003) (accord). As noted above, when the evidence of one offense can be admitted as similar transaction evidence during the trial of the other offense, the decision of whether to sever the offenses for trial is within the discretion of the trial court. *Stewart v. State*, 277 Ga. at 140; *Dickerson v. State*, 304 Ga. App. at 765 (1).

Given the circumstances here, we conclude that the trial court did not abuse its discretion in denying Heck's motion to sever. *Heard v. State*, 287 Ga. at 559 (4); *Stewart v. State*, 277 Ga. at 140; *Dickerson v. State*, 304 Ga. App. at 765 (1); see *Loyless v. State*, 210 Ga. App. at 695 (3) (The trial court did not abuse its discretion in denying the defendant's motion to sever the trial on one count of simple battery, which alleged that he fondled the genitals of his twenty-eight-year-old, mentally challenged neighbor, from the trial on one count of child molestation, which alleged that he fondled the genitals of his six-year-old neighbor.).

2. Heck contends that the trial court committed harmful error when it admitted "irrelevant, non-sexually explicit exhibits" as evidence to show his course of conduct, intent, motive, and bent of mind to commit child molestation. The challenged evidence includes the following: the nudist colony videotapes; the brochure for ordering additional nudist colony videotapes; nine children's live-action or cartoon videotapes; a videotape of a television program involving children; the bag of lollipops; the hair barrettes; the girls' panties; the family-oriented magazines; a comic book; and a child's cookbook. According to Heck, this evidence was irrelevant because there was no evidence that the items were used or otherwise involved in the incidents in this case or that either of the victims were ever exposed to the items. In addition, he claims that the evidence was unduly prejudicial because it suggested that he may have committed previous acts of child molestation that were not otherwise proved.

It is axiomatic that Georgia's laws

favor[ ] the admission of any relevant evidence, no matter how slight its probative value, and evidence is relevant if it renders the desired inference more probable than it would be without the evidence. The admission or exclusion of evidence which is objected to on the ground of relevancy lies within the sound discretion of the trial court, whose decision will not be disturbed on appeal absent a clear abuse of discretion.

(Citation and punctuation omitted.) *Phillips v. State*, 269 Ga. App. 619, 624 (4) (604 SE2d 520) (2004).

In its order denying Heck's motion for new trial, the trial court specifically ruled that it had properly admitted the items as evidence of Heck's bent of mind, concluding that

[a]ll of these items demonstrated [Heck's] inclination towards, or preoccupation with, children. In light of his long-standing lust and sexual desire towards children, as demonstrated by [his] prior convictions and the testimony of the numerous similar transaction witnesses, the jury could have permissibly inferred that these items served as props for [Heck's] sexual stimulation or as lures to gain access to children.

According to the court, it was up to the jury to determine what weight, if any, to give these items.

(a) Regarding the nudist colony videotapes, they were admitted at trial but were not played for the jury. One of the officers who had

seen one of the videotapes, however, described it for the jury as showing "close up" views of a water slide at a lake "with kids and adults together, totally naked, walking up this . . . spiral staircase, and then coming down [the slide]." In addition, the marketing brochure describing similar videotapes for sale includes numerous color pictures showing a total of approximately 100 naked people, most of whom are children or young teenagers with their entire front or back-sides exposed, who are involved in a variety of activities, such as swimming, dancing, trimming a Christmas tree, working on a computer, participating in a beauty contest, and jumping on a trampoline.

The Supreme Court of Georgia has held as follows:

> In a prosecution for a sexual offense, evidence of sexual paraphernalia found in defendant's possession is inadmissible unless it shows defendant's *lustful disposition toward the sexual activity with which he is charged or his bent of mind to engage in that activity*. Under this rule, sexually explicit material cannot be introduced merely to show a defendant's interest in sexual activity. It can only be admitted if it can be linked to the crime charged.

(Emphasis supplied.) *Simpson v. State*, 271 Ga. 772, 774 (1) (523 SE2d 320) (1999).

In this case, the overwhelming evidence, including Heck's own admissions during his interview with the investigator, showed that he regularly invited children into his bedroom to watch movies and to "play" by wrestling with them, tickling them, and chasing them. In addition, Heck admitted that S. A. saw his (Heck's) penis — and vice versa — and he admitted that he did not consider it inappropriate to wrestle with S. A. while the boy was in his underwear on his (Heck's) bed. Given this evidence, as well as Heck's numerous prior acts of child molestation, we conclude that the trial court did not err in finding that the nudist colony videotapes and the brochure were relevant to Heck's bent of mind, nor do we find any abuse of discretion in admitting this evidence at trial, with its significance to be determined by the jury. See *State v. Tyson*, 273 Ga. 690, 694 (4) (544 SE2d 444) (2001) (ruling that "the possession of photographs of nude young girls can be linked to the crime of molestation of a young girl" and, thus, were admissible at trial. In addition, the Court declined to reverse the defendant's conviction based on the possibility that a separate piece of evidence, a nudist camp magazine, could not be linked to the crime charged.).

Further, even if this Court were to accept Heck's argument that it was error to admit the videotapes and the brochure because they

do not show the adults and/or the children actually engaging in any sexual acts and are, therefore, irrelevant because they are not "sexually explicit," we find that any error was harmless due to the other, overwhelming evidence of Heck's guilt. *Phillips v. State*, 269 Ga. App. 619, 627 (5) (b) (604 SE2d 520) (2004); *Lunsford v. State*, 260 Ga. App. 818, 822-823 (4) (581 SE2d 638) (2003).

(b) As for the other "non-sexual" items, such as the little girls' panties, plastic hair barrettes, lollipops, children's movies, etc., given the fact that Heck lived alone, had no children, regularly invited children into his bedroom to "play" and to watch movies, and had previously committed numerous acts of child molestation, the trial court did not err in concluding that the evidence "demonstrate[s] [Heck's] inclination towards, or preoccupation with, children." We find no abuse of discretion in the court's admission of the items as evidence of Heck's bent of mind to commit child molestation.

Further, even if the items should not have been admitted because they were not directly linked to the charged crimes or because they might have suggested that Heck may have committed previous acts of child molestation that were not otherwise proved, we conclude that any error in admitting them was harmless in light of the other, overwhelming evidence of Heck's guilt, especially his admissions and the evidence that conclusively showed that he had, in fact, committed numerous prior acts of child molestation. *Phillips v. State*, 269 Ga. App. at 627-628 (5) (c).

3. Heck contends that he received the ineffective assistance of counsel when his trial counsel and the attorney assisting him misstated the law and erroneously advised him regarding his right to testify by telling him that, if he testified at trial, he would waive his right to have counsel present the final closing argument. According to Heck, he was prejudiced by this erroneous advice, because if he had been properly advised, he would have testified at trial.

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984)[.] The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. [As the appellate court, we] accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003).

At the time of Heck's trial in July 2004, OCGA § 17-8-71 read as follows: "After the evidence is closed on both sides, the prosecuting attorney shall open and conclude the argument to the jury. If the defendant introduces no evidence, his counsel shall open and conclude the argument to the jury after the evidence on the part of the state is closed."[5] A separate statute, OCGA § 24-9-20 (c), provided an exception to the rule, as follows: "In the event that a defendant elects to be sworn and examined, he shall not lose his right to open and conclude the argument to the jury, if he has not introduced other evidence in the trial."[6]

(a) During the hearing on Heck's motion for new trial, both attorneys specifically testified that they knew the correct, applicable law at the time of Heck's trial, and they emphatically denied telling Heck that, if he testified at his trial, he would waive his right to present the final closing argument. Although Heck claimed otherwise, the trial court, in denying Heck's motion, found that Heck "produced absolutely no *reliable* evidence" to show that the attorneys gave him the erroneous advice. (Emphasis supplied.) Because the record supports this finding and this Court must accept the trial court's factual findings and credibility determinations unless they are clearly erroneous, we agree with the trial court's conclusion that Heck has failed to meet the first prong of the *Strickland* test by showing that trial counsel provided deficient representation. *Robinson v. State*, 277 Ga. at 75-76.

(b) Moreover, Heck has failed to show that, even if the attorneys gave him erroneous advice, the error resulted in any prejudice to his defense. At the hearing on his motion for new trial, Heck proffered the testimony that he claims he would have given at trial if he had been properly advised. This testimony included a multitude of statements that duplicated the State's evidence, corroborated the victims' testimony, conflicted with his interview statements to the police, and/or supported his convictions and were not supported by other evidence at trial, such as the following statements: he slept in the same bed with S. A.; he wrestled with S. A. on his (Heck's) bed while the boy was dressed only in his underwear; S. A. watched part

---

[5] In 2005, the Georgia General Assembly amended OCGA § 17-8-71 to read as follows: "After the evidence is closed on both sides, the prosecuting attorney shall open and conclude the argument to the jury. The defendant shall be entitled to make a closing argument prior to the concluding argument of the prosecuting attorney." The amended provision was applicable to all trials that commenced on or after July 1, 2005. Ga. L. 2005, p. 20, § 10.

[6] In the same Act that amended OCGA § 17-8-71, the General Assembly deleted this provision. Ga. L. 2005, p. 20, § 14.

of a pornographic videotape while in Heck's bedroom; S. A. took a bath in Heck's master bathroom; S. A. may have seen Heck's penis and vice versa; S. B. and her stepbrothers had watched movies inside his bedroom; he put S. B. on his lap in his wheelchair, tickled her, and grabbed her on her "bottom" when she started to fall; he collected the little girls' panties that were found under his sink when he cleaned vacated homes in the neighborhood and planned to distribute them to a friend who had five children; he had molested some of the similar transaction victims; and he took medication to suppress his sexual urges toward children.

Accordingly, given this proffered testimony and the overwhelming evidence of his guilt presented at trial, Heck has failed to show that there is a reasonable probability that the outcome of his trial would have been different if he had testified in his own defense. *Robinson v. State*, 277 Ga. at 75-76. Therefore, the trial court did not err in finding that there was no merit to his ineffective assistance claim.

*Judgment affirmed. Doyle, P. J., and Miller, J., concur.*

DECIDED JANUARY 13, 2012.

*Kevin Armstrong*, for appellant.
*Gregory W. Edwards, District Attorney, Melinda A. Wynne, Assistant District Attorney*, for appellee.

