A95A2021. BURCHFIELD v. THE STATE.
(464 SE2d 27)

SMITH, Judge.

Roger Dale Burchfield was convicted of armed robbery, OCGA § 16-8-41, kidnapping, OCGA § 16-5-40, and three counts of terroristic threats on June 29, 1994, OCGA § 16-11-37. His motion for new trial was denied, and he appeals.

1. Burchfield contends the evidence did not support the verdict. Construed in favor of the verdict, the evidence showed that on December 30, 1993, Burchfield entered a convenience store in which Vanessa Cooper was working. He pulled out a gun and told Cooper and her friends Beth Underwood and Tommy Coleman they were being robbed. After threatening to "blow their brains out" if they did not cooperate, he then pointed the gun at Cooper and told her to give him money. Coleman told Burchfield not to hurt Cooper, to which Burchfield replied, cursing, "Don't look at me . . . I'll blow your brains out." He also instructed Underwood and Coleman to lie face down on the floor. Cooper gave Burchfield her car keys and began leaving the store, with the cash drawer, upon his demand. She testified she was walking against her will, "in fear." She walked approximately 18 steps

to the door while Burchfield kept his cocked gun pointed at her. Once outside the door, she threw the change drawer to the ground and ran, eventually reaching a gas station, from which the police were called.

The testimony of Coleman and Underwood was essentially the same as Cooper's testimony. Underwood testified Burchfield threatened to kill Coleman several times and that he told all of them at one point, "I'll blow every blanking one of you away," and that he also stated, "I should just shoot the — out of all three of you."

The record shows that Burchfield was heavily intoxicated when he was apprehended by the police. One of the officers responding to the call regarding the robbery, Don Bruce, testified Burchfield was too intoxicated to be interviewed when he was initially apprehended, and he decided to wait until later to conduct an interview. Patty Marriott, Burchfield's girl friend, testified that on the morning of December 29, and the preceding two mornings, she had put Lorazepam pills in Burchfield's coffee without his knowledge. She had "slipped" him the prescription drugs because he was depressed. She told Burchfield about the drugs only three days before his trial, however, and she never reported her activities to law enforcement because "[t]hat had nothing to do with me."

While "[v]oluntary intoxication is not an excuse for any criminal act," *Bailey v. State*, 198 Ga. App. 632, 633 (2) (402 SE2d 363) (1991); OCGA § 16-3-4 (c), we recognize that involuntary intoxication may be a defense if the accused "did not have sufficient mental capacity to distinguish between right and wrong in relation to such act." OCGA § 16-3-4 (a).

Despite Marriott's testimony regarding the drugs she allegedly placed in Burchfield's coffee, there was evidence from which a rational trier of fact could find beyond a reasonable doubt that Burchfield was guilty of the crimes charged against him under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Marriott's testimony was not conclusive evidence that Burchfield's intoxication was involuntary. Testimony was also presented that he had drunk at least three beers in the early afternoon and consumed a substantial amount of liquor. He admitted no one forced him to drink the alcohol. While Marriott's testimony allowed the jury to consider the involuntary intoxication defense available under OCGA § 16-3-4, whether his intoxication was involuntary was a jury issue. See, e.g., *Yearby v. State*, 153 Ga. App. 159 (264 SE2d 693) (1980).

Moreover, a defendant relying on an involuntary intoxication defense must establish he was unable to distinguish right from wrong. *Rauschenberg v. State*, 161 Ga. App. 331 (291 SE2d 58) (1982). Burchfield's testimony reveals that he had some capacity to distinguish right from wrong prior to robbing the store. He testified that on

the evening of the robbery, he was in a car with his cousin, who suggested robbery to him. Burchfield told him, "[Y]ou are crazy, I'm not robbing no store." This evidence supports a finding by a rational trier of fact that Burchfield could distinguish right from wrong at some time *before* robbing the store. See *Swenson v. State*, 196 Ga. App. 898 (1) (397 SE2d 211) (1990). A question remained for jury determination whether Burchfield later made a conscious decision to rob the store (or became voluntarily intoxicated) after making the comment to his cousin or whether Marriott's alleged administration of medication involuntarily intoxicated him. The jury was properly instructed as to involuntary intoxication and decided this question against Burchfield. The evidence supports the jury's determination.

2. Contending he was still in an intoxicated state when he gave an in-custody statement on December 30, 1993, Burchfield asserts the trial court erred in admitting the statement into evidence. We disagree. The officer who took the statement interviewed Burchfield at approximately 11:00 a.m. the next morning, approximately ten hours after he was arrested, and he testified to Burchfield's condition at the time of that interview. Officer Bruce testified Burchfield understood his *Miranda* rights and "totally wanted to talk" to him; Burchfield was very cooperative and "talked freely on his own"; and "[t]here was a big difference" in Burchfield's condition when he was interviewed and his intoxicated state at the time of his arrest. Bruce further testified that Burchfield was articulate, stable, and sober, even though he had a headache. Finally, Bruce testified he "would have never conducted the interview" if Burchfield were not sober. Clearly, evidence existed from which the trial court could determine Burchfield was sober when the interview was conducted, and it did not abuse its discretion in admitting Burchfield's statement.

*Judgment affirmed. Birdsong, P. J., and Johnson, J., concur.*

DECIDED NOVEMBER 7, 1995.

*Richard Thurman*, for appellant.
*Roger Queen, District Attorney*, for appellee.