## A00A2596. CARTER v. THE STATE.
(546 SE2d 5)

POPE, Presiding Judge.

Lisa Marie Carter was tried by a jury and convicted of aggravated assault with a knife and felony obstruction. She contends that the conviction for aggravated assault was improper because the victim was unafraid. She also challenges both convictions on the ground that she did not have the mental capacity to distinguish between right and wrong.

1. "On appeal from a criminal conviction, the evidence must be construed in the light most favorable to support the verdict, and an appellant no longer enjoys the presumption of innocence." (Citation and punctuation omitted.) *Hight v. State*, 221 Ga. App. 574 (1) (472 SE2d 113) (1996). "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld. [Cit.]" (Punctuation omitted.) *Jackson v. State*, 236 Ga. App. 260, 261 (511 SE2d 615) (1999).

A simple assault is defined as an act which places another in reasonable apprehension of immediately receiving a violent injury. OCGA § 16-5-20 (a) (2). An assault becomes aggravated in certain ways, including when it is perpetrated by use of a deadly weapon. OCGA § 16-5-21 (a) (2). So, if the victim is in reasonable apprehension of an immediate violent injury from a weapon, an aggravated assault has occurred. *Dunagan v. State*, 269 Ga. 590, 593 (2) (b) (502 SE2d 726) (1998). Because reasonable apprehension of injury is not the same as simple fear, the testimony that the victim was not afraid of the defendant does not preclude conviction. *Hicks v. State*, 211 Ga. App. 370, 373 (1) (439 SE2d 56) (1993).

The indictment charged that Carter assaulted Rony Lucero with a knife. Lucero testified that he was talking with some friends outside an apartment when Carter, whom he had never met before, approached. Although Lucero speaks only a little English, he understood that Carter was asking for help and claiming that someone was trying to harm her. But she looked like she was under the influence of alcohol or drugs, and the men ignored her. Carter walked away but returned and pulled out a knife. She "showed the knife and threatened them." When asked if he was afraid of getting cut, Lucero said, "No, not. . . . We were cautious about it." When she waved the knife, the men went inside the apartment and locked the door. When asked why they went inside, Lucero said, "Because she has a knife." On cross-examination, he said that he was not really afraid of being "touched." But he added, "I was not that afraid. I was just being cautious." After the close of the cross-examination, the court asked the question again: "Were you or were you not afraid of what she might

do to you with that knife?" Lucero responded, "I was a little afraid, but more than anything else, I was cautious."

Lucero's testimony amounts to some evidence of reasonable apprehension of injury. He testified that he was a little afraid and cautious, and he took measured steps to protect himself. The evidence was sufficient under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. After the assault, the men called the police and Carter was eventually taken into custody. The testimony is clear that Carter was very uncooperative and difficult to handle and that she eventually "head-butted" a female officer, breaking her nose, which led to the conviction for felony obstruction.

Carter argues that neither conviction can stand because, as a result of combining alcohol and prescription medication, she did not have the mental capacity to distinguish between right and wrong.

OCGA § 16-3-2 provides that a person shall not be found guilty of a crime if "the person did not have mental capacity to distinguish between right and wrong" in relation to the act. OCGA § 16-3-4 (a) adds that a person may not be found guilty if he or she cannot distinguish between right and wrong because he or she is involuntarily intoxicated. But "[v]oluntary intoxication shall not be an excuse for any criminal act or omission." OCGA § 16-3-4 (c). "OCGA § 16-3-4 limits the reach of OCGA § 16-3-2 so that the inability to distinguish between right and wrong is *not* a defense if the inability is a consequence of voluntary intoxication." (Emphasis in original.) *Foster v. State*, 258 Ga. 736, 744 (10) (374 SE2d 188) (1988).

It is undisputed that prior to the actions that led to her arrest, Carter consumed alcohol while on prescription medication in direct contradiction of a doctor's orders. Carter was cross-examined about it as follows:

> Question: Doctor Orr told you particularly in relation to the Ativan, Desyrel, and Zoloft that drinking alcohol was a very bad idea, didn't he?
> Answer: Uh-huh.
> Question: And you did it anyway?
> Answer: Yes.
> Question: And you substituted your experiences with alcohol and these drugs for Doctor Orr's experience in the field. You substituted your judgment for his and took a drink that day, right?
> Answer: Yes.

Carter went on to explain that she had never previously had a side effect from these drugs, not even with alcohol.

The jury was fully instructed regarding the above law including that they could find Carter not guilty if her alleged impaired state was caused by being intoxicated as a result of "excusable ignorance." See OCGA § 16-3-4 (b) (1). Carter's defense of involuntary intoxication was properly presented to the jury. See generally *Johnson v. State*, 235 Ga. 486, 490-491 (1), (2) (220 SE2d 448) (1975); *Burchfield v. State*, 219 Ga. App. 40, 41 (1) (464 SE2d 27) (1995). There was sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that she was not involuntarily intoxicated. *Jackson v. Virginia*, 443 U. S. 307.

*Judgment affirmed. Miller and Mikell, JJ., concur.*

DECIDED FEBRUARY 19, 2001.

*William C. Bushnell*, for appellant.

*Harry N. Gordon, District Attorney, William W. Tanner, Assistant District Attorney*, for appellee.