**THIRD DIVISION**
**MILLER, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 29, 2016**

# In the Court of Appeals of Georgia

A16A0424. IN THE INTEREST OF L. J., a child.

McMILLIAN, Judge.

The juvenile court of Monroe County adjudicated L. J. delinquent for acts which, if committed by an adult, would have constituted criminal trespass and aggravated assault.[1] L. J. appeals following the denial of his motion for new trial, as twice amended, arguing in his sole enumeration of error that the evidence was insufficient to support the adjudication of delinquency. As more fully set forth below, we now affirm in part and reverse in part.

---

[1] L. J. was designated a felon and committed to the Department of Juvenile Justice for 36 months, to serve 18 months in restrictive custody.

On appeal of an adjudication of delinquency, the appellate court determines whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the acts charged beyond a reasonable doubt. *In the Interest of B. B.*, 298 Ga. App. 432, 433 (680 SE2d 497) (2009); *In the Interest of R. J. S.*, 277 Ga. App. 74, 74 (625 SE2d 485) (2005); see also *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

So viewed, the evidence shows that on April 21, 2015, the victim, who is L. J.'s father, drove to the home where L. J. lived with his mother to retrieve guns that were registered to the victim but had been given to L. J. The victim stated that he came to retrieve the guns "because of attitudes" he had noticed in his son. Upon arriving at the house, the victim picked up two guns from inside the house and walked to the door. L. J. placed himself between the victim and the door, telling the victim that he was not going to take the guns. L. J. finally moved, and the victim placed the guns in the back of his truck.

The victim went back in to get a bow, which was in a case, and walked back out with the bow case and set it outside at the door. The victim walked back in to get something else out of the house, and when he did, L. J. took the bow out of the case.

The victim told L. J. not to "knock" an arrow,[2] but L. J. ignored the victim and did so anyway. The victim said at that point he "didn't really know where this was going to go from there" so he went to his truck and opened the driver's side door to stand behind it. The victim explained that he stood behind the vehicle door because he perceived L. J.'s actions in aiming the arrow in his general direction as a threat, even though L. J. never aimed the arrow directly at the victim.

After he knocked the arrow, L. J. moved around the passenger side of the truck and oriented the arrow toward the rear passenger-side tire, telling the victim that he was not going to leave with his guns. The victim got into the driver's side of the truck and started to drive away, but L. J. shot an arrow into the rear passenger tire after the truck had only moved, at most, "a couple of inches." The victim stopped the truck and got out, and L. J. turned and ran away from him. The victim gave chase and was able to catch L. J. and take the bow away from him. The victim walked back to the truck with L. J. following and talking angrily behind him, and on the way back the victim broke or bent the bow on a tree so it could no longer be used as a weapon. L. J. continued to be argumentative and hostile so the victim told him he was going to call

---

[2] The victim explained that to "knock" an arrow means to place an arrow on the bow string.

3

the police. L. J. ran off towards the woods, shouting "if you call the cops . . . I'll kill you and I'll kill them too." The victim called the police and, with the assistance of L. J.'s mother, L. J. was subsequently apprehended during a traffic stop.

The juvenile court adjudicated L. J. delinquent for aggravated assault based on the act of shooting the arrow at the tire, criminal trespass based on the act of shooting and damaging the tire, and aggravated assault based on the act of "knocking" the arrow back in the bow and pointing it in the general direction of the victim so that the victim had to take refuge behind the door of his truck. On appeal, L. J. contends that the evidence was insufficient to support the adjudications of delinquency for aggravated assault because the State failed to prove that the victim was in reasonable apprehension of receiving a violent injury and because the evidence showed that he did not shoot at the tire with the intent to injure the victim.[3] We consider these contentions in turn.

1. L. J. argues that the evidence was insufficient to show that the victim was in reasonable apprehension of receiving a violent injury when he "knocked" the arrow in the bow so as to authorize his adjudication for delinquency for aggravated assault

---

[3] L. J. does not make any specific argument concerning his conviction for criminal trespass, and thus his adjudication of delinquency for that offense is affirmed.

4

based on the acts alleged in petition 2015JR54.[4] In support of this contention, L. J. points to the victim's failure to state he was in reasonable apprehension of receiving an injury from L. J., the victim's testimony that he called police just to prove a point to L. J., and his testimony that he did not think L. J. would shoot at him with the bow and arrow. But contrary to L. J.'s assertion, the victim need not say he was afraid, nor in fact be afraid, in order to experience a reasonable apprehension of receiving a violent injury. *Howard v. State*, 288 Ga. 741, 742-43 (1) (707 SE2d 80) (2011) (reasonable apprehension when victim was sitting on the ground, could have been shot, and would have been shot if he had stood up, even though he testified he was not afraid). The victim demonstrated he had a reasonable apprehension of an immediate injury when he moved behind the door of his truck after L. J. placed an arrow on the bow string although he told him not to do so. Furthermore, the victim testified that he perceived a threat when L. J. removed the bow from the case and pointed the arrow in his general direction, and that he assumed there was a possibility that L. J. might shoot the arrow in his direction. Based on this evidence, a rational

---

[4] Pursuant to OCGA § 16-5-21 (b), aggravated assault is shown by proof of certain aggravating circumstances and an assault. Simple assault is shown by either proof that the defendant attempted to injure someone, OCGA § 16-5-20 (a) (1), or that the victim was in reasonable apprehension of immediately receiving a violent injury. OCGA § 16-5-20 (a) (2).

trier of fact could have made an adjudication of delinquency on the charge of aggravated assault by taking the bow and arrow and knocking the arrow. *Howard*, 288 Ga. at 742 (1) ("Proof that the victim has been placed in apprehension of immediately receiving a violent injury . . . may be inferred from the conduct of the victim such as when he retreats to secure his safety") (citations and punctuation omitted); see *Watson v. State*, 301 Ga. App. 824, 826 (689 SE2d 104) (2009) (victim "raising her hand protectively" showed reasonable apprehension of violent injury).

2. L. J. also argues that the evidence was insufficient to show that he intended to injure the victim by shooting an arrow at the victim's truck while he sat inside or that the victim was in reasonable apprehension of receiving a violent injury, as alleged in petition 2015JR50.

To prove an assault under OCGA § 16-5-20 (a) (1), the State must show that the defendant acted with specific intent to violently injure the victim. *Guyse v. State*, 286 Ga. 574, 577 (2) (690 SE2d 406) (2010) (noting that this method of assault is "a specific intent crime requiring proof that the defendant intended to violently injure someone"); *Dunagan v. State,* 269 Ga. 590, 592 (2) (a) (502 S.E.2d 726) (1998) (aggravated assault under OCGA § 16-5-20 (a) (1) proscribes conduct which is the result of the actor's criminal intent); *Montford v. State*, 254 Ga. App. 524, 526 (1)

6

(564 SE2d 216) (2002) ("the attempted or completed injury to the victim must be the intended consequence of the defendant's act."); see *Klicka v. State*, 315 Ga. App. 635, 637 (1) (b) (727 SE2d 248) (2012) (same).

L. J. asserts that the evidence in this case shows only that he intended to shoot at the tire of the victim's truck and therefore the evidence was not sufficient to show an intent to inflict a violent injury to the victim. We agree that the evidence was insufficient under the facts of this case. The evidence showed that L. J. shot the arrow at the passenger-side rear tire of the vehicle, away from the driver's side where the victim was located. Moreover, the victim testified that, at most, the vehicle had only moved about two inches when L. J. shot the tire, and thus there is no evidence that L. J. intended to injure the victim by causing a vehicular accident by shooting the tire of a moving vehicle. Thus, the evidence, even construed to support the adjudication of delinquency, shows only that L. J. intended to stop his father from leaving with his weapons by shooting his tire and disabling his vehicle, not that he intended to commit a violent injury to the victim.

Further, the evidence was also insufficient to show that the victim was in reasonable apprehension of receiving a violent injury when L. J. shot the arrow at the tire of the truck so as to warrant his adjudication for delinquency based on OCGA §

7

16-5-20 (a) (2).[5] As stated above, L. J. shot the tire on the rear-passenger side, on the opposite side from where the victim was sitting inside the truck. Moreover, the victim testified that he no longer perceived a threat from L. J. shooting him with the bow and arrow after L. J. moved to the passenger side of the truck and was no longer pointing the bow in his general direction. Accordingly, the adjudication of delinquency for aggravated assault based on acts alleged in petition in 2015JR50 must be reversed.[6]

*Judgment affirmed in part and reversed in part. Miller, P. J., and McFadden, J., concur.*

---

[5] Unlike an assault under OCGA § 16-5-20 (a) (1), our appellate courts have previously held that assault under OCGA § 16-5-20 (a) (2) is a general intent crime. E.g., *Guyse*, 286 Ga. at 577 (2) (OCGA § 16-5-20 (a) (2) "is a general intent crime, meaning the State need only prove that the defendant intended to do the act that placed another in reasonable apprehension of immediate violent injury[.]); *Patterson v. State*, 332 Ga. App. 221, 224-25 (2) (770 SE2d 62) (2015). However, our Supreme Court has granted a writ of certiorari in *Patterson* to consider whether this Court erred "when it concluded that simple assault under OCGA § 16-5-20 (a) (2) requires no specific intent to cause injury or apprehension of injury." *Patterson v. State*, Case No. S15C1303, 2015 Ga. LEXIS 825 (November 2, 2015).

[6] Because we reverse based on insufficient evidence, it is unnecessary for us to consider whether the aggravated assault offenses, which appear to us to be based on the continuous act of placing an arrow on a bow string and shooting, merged. See *Regent v. State*, Case No. S15G1829, ___ Ga. ___ (___ SE2d ___) 2016 Ga. LEXIS 408, (decided June 6, 2016).