**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**MCMILLIAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 9, 2020**

# In the Court of Appeals of Georgia

A19A2166. IN THE INTEREST OF J. H., a child.

MCFADDEN, Chief Judge.

The juvenile court adjudicated J. H. delinquent for two acts which, if committed by an adult, would have constituted aggravated assault. See OCGA § 16-5-21 (a) (2). The juvenile court specifically found that by charging two people with a butcher knife, J. H. attempted to commit a violent injury and placed those people in reasonable apprehension of receiving a violent injury. J. H. appeals following the denial of his motion for new trial, arguing that the evidence was insufficient to support his adjudication of delinquency because the state failed to prove that the knife constituted a deadly weapon or that he placed either person in reasonable apprehension of receiving a violent injury. Because the evidence authorized the juvenile court's adjudication of delinquency, we affirm.

1. *Facts.*

"On appeal of an adjudication of delinquency, the appellate court determines whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the acts charged beyond a reasonable doubt." *In the Interest of L. J.*, 337 Ga. App. 653, 653 (788 SE2d 531) (2016). "The evidence is considered under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), with all reasonable inferences construed in favor of the juvenile court's findings." *In the Interest of T. W.*, 280 Ga. App. 693, 693 (634 SE2d 854) (2006).

So viewed, the evidence shows that J. H. and his older sister were involved in an argument at their home which escalated to the point of J. H. pushing and shoving her. The sister's boyfriend intervened in order to separate the two. J. H. said that he was going to beat up his sister, threw her belongings on the floor, and kicked a hole in her bedroom door while trying to kick it in. J. H.'s sister and her boyfriend decided to leave the home because they wanted to get away from the situation and because the boyfriend needed to go to the bank. However, as they were leaving and getting in their vehicle, J. H. came outside, discovered that his sister had thrown his shoes outside, and confronted them. J. H. ran up to the passenger side door, yelled at his

2

sister, who was in the passenger seat, and tried to hit her with a shoe; she rolled the door's window up, which had been partially down, and J. H. banged on the window. The boyfriend grabbed J. H. from behind, pulled him away from the door despite his resistance, and told him to relax; the two then exchanged heated words.

J. H. went back into the home, but then came back outside carrying a butcher knife. At that time, his sister was still in the car passenger seat, but her boyfriend was standing outside. With the knife in his hand, J. H. charged at them. In response to seeing J. H. and being warned by J. H.'s mother to watch out, the boyfriend quickly jumped in the vehicle and drove away. J. H. chased after the vehicle and threw the knife at it as it was pulling off, hitting the driver's side door.

2. *The evidence supports the juvenile court's finding that the butcher knife in J. H.'s hand constituted a deadly weapon.*

J. H. argues that there was insufficient evidence presented for the juvenile court to determine that the knife in his hand constituted a deadly weapon. J. H. asserts that: the knife was not tendered into evidence; J. H. did not threaten anyone while holding the knife; and his act of throwing the knife at a moving vehicle, which his sister and her boyfriend were safely inside of, caused no injuries.

OCGA § 16-5-21 (a) (2) provides: "A person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury[.]"

> Under the Code, aggravated assault has two essential elements: (1) an attempt to commit a violent injury, or an act that places another in reasonable apprehension thereof, and (2) that the assault was aggravated by either (a) an intention to murder, rape or rob, or (b) the use of a deadly weapon or an object that likely could or actually did result in serious bodily injury.

*Watson v. State*, 301 Ga. App. 824, 825 (689 SE2d 104) (2009) (citation and punctuation omitted); see also *In the Interest of L. J.*, 337 Ga. App. at 655 (1) n. 4 ("[A]ggravated assault is shown by proof of certain aggravating circumstances and an assault. Simple assault is shown by either proof that the defendant attempted to injure someone, OCGA § 16-5-20 (a) (1), or that the victim was in reasonable apprehension of immediately receiving a violent injury. OCGA § 16-5-20 (a) (2).").

The juvenile court, as the factfinder, was authorized to find that the butcher knife in J. H.'s hand constituted a deadly weapon. In *Sexton v. State*, 189 Ga. App. 331, 332 (3) (375 SE2d 661) (1988), this court held that whether a pocketknife, which

4

the defendant swung at store employees while backing out of the store, constituted a deadly weapon was properly for the jury's determination. See also *In the Interest of T. W.*, 280 Ga. App. at 693-694 ("Whether the instrument used constitutes a deadly weapon in an aggravated assault case is properly for the jury's determination."). This court explained that the knife in *Sexton*, "though rather small and of a type suitable for carrying in the pocket, was arguably capable of inflicting the types of injuries which generally can be produced by knives, including death or great bodily injury." 189 Ga. App. at 332 (3). In light of the testimony here that J. H. charged at his sister and her boyfriend with a butcher knife, the evidence supports the juvenile court's finding that the knife constituted a deadly weapon. See *Wells v. State*, 125 Ga. App. 579, 580 (188 SE2d 407) (1972) (jury was authorized to find that switchblade knife or pocketknife was a deadly weapon); see also *Fitzhugh v. State*, 166 Ga. App. 320, 321 (304 SE2d 127) (1983) ("The deadly force of a 12-½ inch butcher knife when deliberately carried for the purpose of deadly force is known to all[.]") (citation and punctuation omitted).

J. H.'s emphasis on the fact that the butcher knife was not admitted into evidence is unavailing, as "[i]t is not necessary for the [s]tate to admit into evidence the deadly weapon used by the defendant in order for the defendant to be found guilty

5

of aggravated assault." *Lattimer v. State*, 231 Ga. App. 594, 595 (499 SE2d 671) (1998). Furthermore, the mere fact that J. H. was unable to actually injure his sister and her boyfriend because they were inside the vehicle does not negate the knife's status as a deadly weapon, capable of inflicting death or great bodily injury. See *Davis v. State*, 184 Ga. App. 230, 231 (1) (361 SE2d 229) (1987) (whether a knife which the defendant brandished at the victim constituted a deadly weapon was for the jury's determination, despite the fact that the victim may have been out of striking range, because the knife "was arguably capable of inflicting the types of injuries which generally can be produced by knives, including death or great bodily injury") (citation and punctuation omitted).

3. *The evidence supports the juvenile court's finding that the boyfriend was placed in reasonable apprehension of immediately receiving a violent injury.*

J. H. argues that there was insufficient evidence to show that he placed his sister's boyfriend in reasonable apprehension of immediately receiving a violent injury. In support, J. H. points to the boyfriend's testimony that he was not nervous when J. H. came outside with the butcher knife and did not believe J. H. was trying

6

to hurt him. J. H. claims that the boyfriend drove away in order to go to the bank and to de-escalate the situation, not because he perceived J. H. as a threat.[1]

The juvenile court was authorized to find that J. H.'s actions placed the boyfriend in reasonable apprehension of immediately receiving a violent injury. After a series of escalating altercations in which the boyfriend was required to intervene in order to separate J. H. and his sister, J. H. charged at the boyfriend with a butcher knife while the boyfriend was standing outside of a vehicle, forcing him to quickly enter the vehicle and drive off. See *Petro v. State*, 327 Ga. App. 254, 257-258 (1) (a) (758 SE2d 152) (2014) (evidence supported aggravated assault conviction, where defendant pointed butcher knife at victim when victim tried to intervene in an attack, and victim then fled from the residence and crouched behind a vehicle); *Atwell v. State*, 293 Ga. App. 586, 587-588 (1) (667 SE2d 442) (2008) (jury could conclude that victim had reasonable apprehension of receiving immediate violent injury, where defendant broke into victim's home while she was asleep and pulled a knife on her and began waving it, even though there was testimony that defendant was not close enough to cut victim and was not swinging the knife directly at her). While J. H.

---

[1] J. H. does not challenge the juvenile court's finding that he attempted to commit a violent injury against the boyfriend.

7

places great emphasis on the boyfriend's trial testimony that he was not nervous, "the victim need not say he was afraid, nor in fact be afraid, in order to experience a reasonable apprehension of receiving a violent injury." *In the Interest of L. J.*, 337 Ga. App. at 655 (1); see also *Carter v. State*, 248 Ga. App. 139, 139 (1) (546 SE2d 5) (2001) ("Because reasonable apprehension of injury is not the same as simple fear, the testimony that the victim was not afraid of the defendant does not preclude conviction.").

Indeed, "[p]roof that the victim has been placed in apprehension of immediately receiving a violent injury need not necessarily be solely by reason of the victim's testimony of his mental state but may be inferred from conduct of the victim such as when he retreats to secure his safety." *Howard v. State*, 288 Ga. 741, 742 (1) (707 SE2d 80) (2011) (citation and punctuation omitted). Here, the boyfriend testified that in response to having J. H. "r[u]n up on him" in close proximity with the butcher knife, he "jumped in the vehicle and swerved off . . . [j]ust to get away" and because it was the safest thing to do. Thus, despite the boyfriend's testimony that he was not nervous and did not think J. H. would hurt him, his conduct supports the juvenile court's finding that he was placed in reasonable apprehension of immediately receiving a violent injury. See *In the Interest of L. J.*, 337 Ga. App. at 654-655 (1)

8

(evidence supported finding that victim was in reasonable apprehension of violent injury when juvenile "nocked" or placed an arrow in a bow, despite victim's testimony that he did not think juvenile would shoot at him, because victim moved behind the door of his truck in response to juvenile's actions).

4. *The evidence supports the juvenile court's finding that the sister was placed in reasonable apprehension of immediately receiving a violent injury.*

J. H. argues that there was insufficient evidence to show that he placed his sister in reasonable apprehension of immediately receiving a violent injury. J. H. asserts that: his sister's testimony indicates she only perceived J. H. as a threat to her boyfriend; his sister was sitting safely in the vehicle when J. H. approached with the knife; and she was in the vehicle because she was waiting for her boyfriend to drive her to the bank, not because of any perceived threat.[2]

The juvenile court was authorized to find that J. H.'s actions placed his sister in reasonable apprehension of immediately receiving a violent injury. Throughout the day in question, J. H. pushed and shoved her, told her he was going to beat her up, and kicked a hole in her bedroom door. Then, while she was in the vehicle, J. H. ran up to her door, tried to hit her with a shoe as she pulled the window up, and banged

---

[2] J. H. does not challenge the juvenile court's finding that he attempted to commit a violent injury against his sister.

9

on the window, forcing her boyfriend to pull him away. Finally, J. H. charged at his sister and her boyfriend with a butcher knife, forcing the boyfriend to quickly enter the vehicle and drive off with the sister; and as they were leaving J. H. ran after them and threw the knife at them.

Even though the sister was inside the vehicle as J. H. charged at her with the butcher knife, there was evidence that she was there at least partly because she was seeking protection from him. See *Watson*, 301 Ga. App. at 826 (victim's act of raising her hand protectively showed apprehension of violent injury); *Hurt v. State*, 158 Ga. App. 722, 724 (282 SE2d 192) (1981) (jury was authorized to find that defendant's taunting use of a shotgun at the back door of a home was sufficient to place victim in reasonable apprehension of immediately receiving violent injury, where victim sought safety in the home in response). Prior to charging his sister with the knife, J. H. had recently kicked a hole in her bedroom door and banged on the vehicle's window where she was sitting, and as J. H. charged she could have reasonably feared that he would attempt to enter the vehicle forcefully. See *Gunter v. State*, 316 Ga. App. 485, 486-487 (1) (729 SE2d 597) (2012) (jury was authorized to conclude that victim was placed in reasonable apprehension of immediately receiving violent injury, where defendant threatened her life and chased after her with a large knife,

10

despite the fact that the knife was covered in its sheath); *Carter*, 248 Ga. App. at 139-140 (1) (evidence supported finding that victim was in reasonable apprehension of injury, where victim testified that defendant approached him with a knife and threatened him, and in response he went inside an apartment and locked the door).

In addition, J. H.'s sister testified that she could clearly see the butcher knife as J. H. charged her, and "the presence of a knife would normally place a victim in reasonable apprehension of being injured violently." *State v. Bolman*, 222 Ga. App. 534, 535 (474 SE2d 721) (1996). Thus, in light of her conduct and the presence of the butcher knife, we will not disturb the juvenile court's finding that she was placed in reasonable apprehension of violent injury, despite her testimony that she was not scared. See *Lunsford v. State*, 260 Ga. App. 818, 821-822 (2) (581 SE2d 638) (2003) (evidence demonstrated victim had reasonable apprehension of injury, despite her testimony that she was not afraid and knew defendant would not hurt her, where in response to defendant shooting the phone on which she was talking, she ran out of the house and got in a vehicle), disapproved of on other grounds by *Scott v. State*, 306 Ga. 507, 510 (2) (832 SE2d 426) (2019).

*Judgment affirmed. McMillian, P. J., and Senior Appellate Judge Herbert E. Phipps concur.*

11