**FIRST DIVISION**
**BROWN, C. J.,**
**BARNES, P. J., and WATKINS, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**November 3, 2025**

# In the Court of Appeals of Georgia

A25A1715. IN THE INTEREST OF K. R., a child.

BARNES, Presiding Judge.

The juvenile court adjudicated K. R. delinquent for acts which, if committed by an adult, would have constituted two counts of aggravated assault.[1] K. R. appeals, contending that the evidence was insufficient to support her adjudication of delinquency. For the reasons discussed below, we affirm in part and reverse in part the adjudication of delinquency, and we vacate the order of disposition and remand for further action consistent with this opinion.

---

[1] The juvenile court also adjudicated K. R. delinquent for acts which, if committed by an adult, would have constituted two counts of criminal trespass and one count of obstructing or hindering law enforcement officers. K. R. admitted to those acts at the adjudicatory hearing and does not challenge on appeal her adjudication of delinquency as to them.

"On appeal of an adjudication of delinquency, the appellate court determines whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the acts charged beyond a reasonable doubt." *In the Interest of L. J.*, 337 Ga. App. 653, 653 (788 SE2d 531) (2016). See *In the Interest of J. H.*, 354 Ga. App. 253, 253 (1) (840 SE2d 633) (2020) (noting that in evaluating the sufficiency of the evidence in a juvenile delinquency proceeding, appellate courts apply the standard set out in *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979)).

So viewed, the evidence shows that on the day in question, K. R. was thirteen years old and lived with her great-grandmother in Troup County. K. R. and her great-grandmother got into a "routine argument," and K. R. became angry, ran into the kitchen, retrieved a knife, and raised the knife over her head. According to the great-grandmother, "sometimes when [K. R.] gets mad, . . . the first thing she'll run and grab[ ] is a knife." The great-grandmother asked K. R. to put down the knife and ultimately was able to remove the knife from her hand without "a lot of resistance." The great-grandmother testified that she was "[n]ot really" nervous about K. R. brandishing the knife and "knew that she wasn't going to cut [her]." However, when

asked why she took the knife away from K. R., the great-grandmother responded, "Because I didn't want nothing to happen with the knife."

After taking away the knife, the great-grandmother was standing close to K. R. As related by the great-grandmother, K. R. began

> playing around with the little nail clip, and she just accidentally clipped me on the arm a little bit. It didn't — it just did break the skin, but it didn't bleed. And she immediately said she was sorry, you know. And I know she was.

The great-grandmother testified that the nail clippers caused a "little scrape" or scratch on her arm and "didn't even bleed or anything." She described the nail clippers as "[p]robably like the one[s] . . . you do your cuticles or something like that with," but she admitted that she was unsure what specific type of clippers K. R. had been holding.

At some point during the encounter between K. R. and her great-grandmother, the police were called because the situation had become "out of control."

The police responded to the scene, and the State subsequently filed a delinquency complaint and petition in the Juvenile Court of Troup County based on the incidents involving the knife and nail clippers. The delinquency petition, as

amended, alleged that K. R. engaged in acts that, if committed by an adult, would have constituted two counts of aggravated assault (with the first count predicated on the brandishing of the kitchen knife and the second count predicated on cutting the great-grandmother with the nail clippers). At the adjudicatory hearing, the sole witness was the great-grandmother, who testified to her interaction with K. R. as set out above. The State did not introduce into evidence any exhibits. At the conclusion of the hearing, the juvenile court found that K. R. committed two delinquent acts of aggravated assault as alleged in the delinquency petition and thereafter entered an order of adjudication to that effect. The juvenile court entered a disposition order, as amended, removing K. R. from the great-grandmother's home and ordering her detention in a regional youth detention center. This appeal followed.

A person may be found guilty of aggravated assault if the State proves (1) an assault and (2) aggravation by use of any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury. The State may prove an assault by showing that the defendant committed an act that placed the victim in reasonable apprehension of immediately receiving a violent injury.

(Citation and punctuation omitted.) *Thompson v. State*, 332 Ga. App. 204, 210 (2) (770 SE2d 364) (2015). See OCGA §§ 16-5-20 (a) (2); 16-5-21 (a) (2); *In the Interest of J. H.*, 354 Ga. App. at 254 (2). The first aggravated assault count of the delinquency petition alleged in relevant part that K. R. made an assault upon her great-grandmother "with a knife, an object which, when used offensively against a person, is likely to result in serious bodily injury, by brandishing said knife." The second aggravated assault count alleged in relevant part that K. R. made an assault upon her great-grandmother "with nail clippers, an object which, when used offensively against a person, is likely to result in serious bodily injury, by cutting her with said nail clippers."

1. As to the first count of aggravated assault, K. R. argues that there was insufficient evidence to show that her great-grandmother was placed in reasonable apprehension of immediately receiving a violent injury from the kitchen knife. We disagree.

It is well-established that "proof that the victim has been placed in apprehension of immediately receiving a violent injury . . . may be inferred from conduct of the victim," *In the Interest of J. H.*, 354 Ga. App. at 256 (3), and "[a]

5

victim's defensive reaction can provide circumstantial evidence of a reasonable apprehension of immediately receiving violent injury." *Watts v. State*, 321 Ga. App. 289, 293 (1) (739 SE2d 129) (2013). See *Carter v. State*, 248 Ga. App. 139, 140 (1) (546 SE2d 5) (2001) (concluding that the evidence was sufficient to establish a reasonable apprehension of immediate violent injury, where there was evidence that the victim "took measured steps to protect himself"). Moreover, "the presence of a knife would normally place a victim in reasonable apprehension of being injured violently." (Citation and punctuation omitted.) *In the Interest of J. H.*, 354 Ga. App. at 258 (4).

Here, the evidence showed that K. R. became angry, retrieved a knife from the kitchen, and held the knife over her head, leading the great-grandmother to take defensive action by removing the knife from K. R.'s hand. Based on K. R.'s brandishing of the knife and the great-grandmother's reaction, the juvenile court was authorized to find that the great-grandmother was in reasonable apprehension of immediately receiving a violent injury. See *Watts*, 321 Ga. App. at 293 (1) (determining that victim's testimony that she "attempted to keep [the defendant] at arm's length" supported an inference that she reasonably apprehended immediately receiving a violent injury); *Watson v. State*, 301 Ga. App. 824, 826 (689 SE2d 104)

(2009) (concluding that the victim's "act of raising her hand protectively" demonstrated reasonable apprehension of immediate violent injury).

It is true that the great-grandmother testified that she was not nervous about K. R. holding the knife and did not believe that K. R. would cut her, but she also stated that she took away the knife from K. R. because she "didn't want nothing to happen with the knife." In any event, "the victim need not say [she] was afraid, nor in fact be afraid, in order to experience a reasonable apprehension of receiving a violent injury." (Citations and punctuation omitted.) *In the Interest of J. H.*, 354 Ga. App. at 256 (3). See *Carter v. State*, 248 Ga. App. 139, 139 (1) (546 SE2d 5) (2001) ("Because reasonable apprehension of injury is not the same as simple fear, the testimony that the victim was not afraid of the defendant does not preclude conviction."). Reasonable apprehension of immediately receiving a violent injury can be inferred from conduct irrespective of the victim's testimony about her mental state. See *Howard v. State*, 288 Ga. 741, 742 (1) (707 SE2d 80) (2011); *In the Interest of J. H.*, 354 Ga. App. at 256-257 (3). Despite the great-grandmother's testimony that she "was not nervous and did not think [K. R.] would hurt [her], [her] conduct supports the juvenile court's finding that [she] was placed in reasonable apprehension of

immediately receiving a violent injury." *In the Interest of J. H.*, 354 Ga. App. at 257 (3). We therefore discern no basis for disturbing the juvenile court's adjudication of delinquency predicated on the first count of aggravated assault.

2. As to the second count of aggravated assault, K. R. argues that there was insufficient evidence to show that the nail clippers were an object that was likely to result in serious bodily injury under the circumstances of this case. We agree with K. R.

As previously noted, a person commits aggravated assault when she assaults someone with an object that "when used offensively against a person, is likely to . . . result in serious bodily injury."[2] OCGA § 16-5-21 (a) (2). Because "serious bodily injury" is not defined in the aggravated assault statute, whether an object is likely to

---

[2] A person also commits aggravated assault by assaulting a person with an object that when used offensively "actually does result in serious bodily injury." OCGA § 16-5-21 (a) (2). But the amended delinquency petition in this case alleged only that the aggravated assault predicated on the nail clippers was committed with an object that was likely to cause serious bodily injury. K. R. was not charged with "actually causing serious bodily injury, and since there is no allegation in the [delinquency petition] that serious bodily injury in fact occurred," the State was not required to prove that the great-grandmother actually suffered a serious bodily injury. *Massey v. State*, 278 Ga. App. 303, 304 (1) (628 SE2d 706) (2006). See *Weaver v. State*, 325 Ga. App. 51, 52, (752 SE2d 128) (2013).

cause serious bodily injury generally is a question for the fact finder to resolve, taking into account "all the circumstances surrounding the weapon and the manner in which it was used." (Citation and punctuation omitted.) *Weaver v. State*, 325 Ga. App. 51, 52 (752 SE2d 128) (2013). "These circumstances include the manner and means of the object's use, as well as any wounds inflicted and other evidence of the capabilities of the instrument." (Citation and punctuation omitted.) Id. See *Reese v. State*, 303 Ga. App. 871, 872 (695 SE2d 326) (2010); *Ellison v. State*, 288 Ga. App. 404, 405 (654 SE2d 223) (2007). The burden is on the State to show that the circumstances under which the object was used by the defendant show that the object was likely to cause serious bodily injury. See *Harvey v. State*, 373 Ga. App. 59, 62 (1) (a) (907 SE2d 352) (2024); *Byrd v. State*, 325 Ga. App. 24, 28-29 (2) (a) (752 SE2d 84) (2013).

The State failed to carry its burden here. The great-grandmother testified that K. R. was "playing around" with nail clippers and "accidentally clipped [her] on the arm a little bit" as they were standing close together, and the State did not impeach the great-grandmother with any prior inconsistent statements or call any other witnesses to challenge her version of what occurred. Moreover, the great-grandmother testified without contradiction that she received only a scratch or "little scrape" that

did not bleed, and she testified that the clippers probably were the type used for trimming cuticles but she was unsure. The State did not introduce into evidence the nail clippers or any photographs of the clippers or of the great-grandmother's injury.

Given the great-grandmother's uncontradicted testimony and the otherwise sparse record regarding the circumstances of the nail clippers incident, we conclude that the evidence was insufficient to authorize a reasonable factfinder to find beyond a reasonable doubt that the nail clippers were an object likely to result in serious bodily injury. *Jackson*, 443 U. S. at 319 (III) (B); *In the Interest of L. J.*, 337 Ga. App. at 653. See *Williams v. State*, 127 Ga. App. 386, 389 (2) (193 SE2d 633) (1972) (concluding that evidence was insufficient to show that defendant committed aggravated assault by kicking the victim with his shoe, where "the evidence produced by the State through its single prosecuting witness failed to show any of these details that would make the shoe a 'deadly weapon,'" such as the physical characteristics of the shoe, "the manner in which the foot was used to kick, the nature of the injuries received, the number of times victim was kicked and the degree of force used"). Accordingly, because there was insufficient evidence to establish an essential element of the offense,

we reverse the juvenile court's adjudication of delinquency to the extent it was predicated on the alleged aggravated assault committed by K. R. with the nail clippers.

3. Because it is unclear to what extent the juvenile court based its dispositional order on its finding that K. R. committed aggravated assault with the nail clippers, we vacate that order and remand the case to the juvenile court for reconsideration of the disposition in light of this opinion. See *In the Interest of C. L.*, 289 Ga. App. 377, 381 (1) (b) (657 SE2d 301) (2008); *In the Interest of N. L. G.*, 267 Ga. App. 428, 430 (2) (600 SE2d 401) (2004).

*Judgment affirmed in part, reversed in part, and vacated in part, and case remanded with direction. Brown, C. J., and Watkins, J., concur.*